# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NUMBER: |
| | ) |
| THE ESTATE OF CHARLES E. MCNEIL, SR., and MCNEIL AND RAST, LTD., | )<br>)<br>)<br>) |
| Defendants. | ) |

## VERIFIED COMPLAINT

**COMES NOW** the plaintiff in the action, Wachovia Bank, National Association ("Wachovia") and for its complaint against defendants The Estate of Charles E. McNeil, Sr. (the "Estate") and McNeil and Rast, Ltd. ("MRLP" and with the Estate, the "Defendants"), states as follows:

### Jurisdiction and Venue

1. Plaintiff Wachovia is a national banking association having its principal place of business in Mecklenburg County, North Carolina.

2. Defendant Estate is a decedent's estate currently pending in the Probate Court of Mobile County, Alabama (the "Probate Court"), as Case No. 09-2232. At the time of his death, Charles E. McNeil, Sr. ("McNeil") was an individual residing in Mobile County, Alabama.

3. Defendant MRLP is a limited partnership organized under the laws of the State of Alabama. Upon information and belief, (a) the Estate has a 99% limited partnership interest in MRLP; (b) CEM Holdings, Inc. ("CEM"), has a 1% general partner in MRLP; and (c) CEM, a corporation organized under the laws of the State of Alabama, is 100% owned by the Estate.

1

1/2006970.4

4. The amount in controversy against each of the Defendants, exclusive of interest and costs, exceeds $75,000.00, and complete diversity exists between Wachovia on the one hand and the Defendants on the other.

5. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## Statement of Facts

### The McNeil Loan

7. Wachovia previously made a $2,225,000 loan (the "McNeil Loan") to McNeil as presently evidenced by that certain *Promissory Note* (the "McNeil Note") dated December 30, 2008, made by McNeil payable to Wachovia in the stated principal amount of $2,225,000. A true and correct copy of the McNeil Note is attached hereto as **Exhibit A** and incorporated herein by reference.

8. The McNeil Loan is secured by that certain *Mortgage and Assignment of Rents* (the "McNeil 1st Lien Mortgage") from MRLP to Wachovia dated January 30, 2008 pursuant to which MRLP granted Wachovia a lien on and interest in certain real property located in Mobile, Alabama, more commonly known as the Dauphin Center Office Plaza Condominiums (the "Office Condominiums") to secure the McNeil Loan. The McNeil 1st Lien Mortgage was recorded in the Office of the Judge of Probate of Mobile County, Alabama (the "Recording Office") on February 6, 2008 at Real Property Book 6327, Page 857. A true and correct copy of the McNeil 1st Lien Mortgage is attached hereto as **Exhibit B** and incorporated herein by reference.

9. Upon information and belief, the lien and interest in the Office Condominiums granted to Wachovia pursuant to the McNeil 1st Lien Mortgage is a first-priority lien and interest.

10. In the section entitled **"Remedies of Bank on Default"** in the McNeil 1st Lien Mortgage, one of Wachovia's remedies is stated as follows:

> Failure of Mortgagor or any other person liable to timely pay or perform any of the Obligations . . . is a default ("Default") under this Mortgage. Upon the occurrence of a Default the following remedies are available, without limitation, to Bank:
>
> (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. In the event of such application, Mortgagor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Mortgagor, without regard to whether Mortgagor has committed waste or permitted deterioration of the Property, without regarding to the adequacy of any security for the Obligations, and without regard to the solvency of Mortgagor or any other person, firm, or corporation who or which may be liable for the payment of the Obligations.

11. The section in the McNeil 1st Lien Mortgage entitled **"Assignment of Rents"** provides:

> Mortgagor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively, the "Rents"). Although this assignment is effective immediately, so long as no Default exists, Bank gives to and confers upon Mortgagor the privilege under a revocable license to collect as they become due, but not prior to accrual, the Rents and demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Mortgagor for all such Rents. [ . . . ] Upon any occurrence of Default, the license granted to Mortgagor herein shall be automatically revoked without further notice to or demand upon Mortgagor, and Bank shall have the right, in its discretion, without notice, by agent or by a receiver appointed by a court, and without regard to any adequacy for the security of the Obligations, . . . (ii) to notify tenants, subtenants, and any property manager to pay Rents to Bank or its designee, and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Mortgagor . . . .

This section in the McNeil 1st Lien Mortgage shall be referred to hereinafter as the "<u>Assignment of Rents Clause</u>"

### The MRLP Loan

3

12. Wachovia previously made a $1,500,000 loan (the "MRLP Loan") to MRLP as presently evidenced by that certain *Promissory Note* (the "MRLP Note") dated May 15, 2008, made by MRLP payable to Wachovia in the stated principal amount of $1,500,000. A true and correct copy of the MRLP Note is attached hereto as **Exhibit C** and incorporated herein by reference.

13. The McNeil Loan is secured by that certain *Mortgage and Assignment of Rents* (the "MRLP 2nd Lien Mortgage") from MRLP to Wachovia dated May 15, 2008 pursuant to which MRLP granted Wachovia a lien on and interest in the Office Condominiums to secure the MRLP Loan. The MRLP 2nd Lien Mortgage was recorded in the Recording Office on May 20, 2008 at Real Property Book 6381, Page 1512. A true and correct copy of the MRLP 2nd Lien Mortgage is attached hereto as **Exhibit D** and incorporated herein by reference.

14. Upon information and belief, the lien and interest in the Office Condominiums granted to Wachovia pursuant to the MRLP 2nd Lien Mortgage is a second-priority lien and interest.

15. In conjunction with the MRLP Loan, McNeil executed that certain *Unconditional Guaranty* (the "McNeil Guaranty") pursuant to which McNeil guaranteed the timely payment and performance of all of MRLP's obligations under the MRLP Loan.

### The Default on the McNeil Loan

16. The McNeil Loan matured on its own terms on March 31, 2009.

17. The last regular monthly payment made on the McNeil Loan was made on February 9, 2009. No other payments were made by McNeil on the McNeil Loan after February 9, 2009.

### Mr. McNeil's Death and the Opening of the Estate

18. McNeil died on or about September 9, 2009.

19. On or about September 29, 2009, the Probate Court entered an Order (a) granting the petition to probate McNeil's last will and testament; (b) granting letters testamentary to Mildred C. McNeil; and (c) appointing Mildred C. McNeil as personal representative of the Estate. A true and correct copy of the Probate Court's Order is attached hereto as **Exhibit E** and incorporated herein by reference.

20. On or about December 9, 2009, Wachovia filed a claim against the Estate (the "Wachovia Estate Claim") based on the amounts due and owing under the McNeil Loan and the MRLP Loan (as a result the McNeil Guaranty). A true and correct copy of the Wachovia Estate Claim is attached hereto as **Exhibit F** and incorporated herein by reference.

Notice of Default and Demand for Payment on the McNeil Loan

21. On or about December 21, 2009, Wachovia gave written notice to the Estate of the maturity/default under the McNeil Loan and demanded payment in full. A true and correct copy of that written notice is attached hereto as **Exhibit G** and incorporated herein by reference.

Notice of Default and Demand for Payment on the MRLP Loan

22. On or about January 14, 2010, Wachovia gave written notice to MRLP of a default under the MRLP Loan for, among other things, a default in the McNeil Guaranty. A true and correct copy of that written notice is attached hereto as **Exhibit H** and incorporated by reference.

Interception of the Rents from the Office Condominiums

23. On or about January 14, 2010, Wachovia gave notice by letter (collectively, the "Rent Interception Letters") to the four (4) known tenants of the Office Condominiums (the "Tenants") that it was exercising its rights under the Assignment of Rents Clause in the McNeil

1st Lien Mortgage as a result of the default under the McNeil Loan. The Rent Interception Letters also demanded that each tenant pay to Wachovia directly all leases, rents, issues and profits due MRLP (collectively, the "Rents") under the respective leases with MRLP. True and correct copies of the Rent Interception Letters are attached hereto collectively as **Exhibit I** and incorporated herein by reference.

### The Estate's Use of the Rents

24. During a phone conference among the parties and their representatives on January 26, 2010, the Estate and MRLP disclosed to Wachovia that some portion of the Rents had been used to pay certain loan obligations of Kings' Lake, LLC ("Kings' Lake"). Upon information and belief, McNeil owned 50% of Kings' Lake at the time of his death, and therefore the Estate now owns a 50% interest.

25. During that phone conference and by subsequent letter from its counsel dated January 29, 2010, Wachovia requested that the Estate provide an accounting of all Rents received since McNeil's death. To date, no such accounting has been provided to Wachovia.

### Payment of the Expenses on the Office Condominiums

26. The parties, during the phone conference on January 26, 2010, discussed an arrangement pursuant to which MRLP and the Estate would stipulate and inform the Tenants that the Rents should be paid directly to Wachovia and that Wachovia would pay for approved expenses from the Rents it was collecting. The Estate and MRLP agreed that this was a reasonable arrangement that would benefit both parties.

27. Since the January 26, 2010 phone conference, Wachovia has made repeated efforts to put into place such an arrangement for the payment of the expenses on the Office Condominiums but has not been successful in its efforts.

28. To the contrary, Wachovia has received numerous correspondence from John McNeil, one of McNeil's heirs, attaching numerous outstanding invoices for alleged expenses of the Office Condominiums and demanding that those expenses be paid. Further, and more problematic, it appears that several of these invoices are for expenses incurred several months ago (one appears to be from February 2009). True and correct copies of those invoices and the cover letters pursuant to which they were sent are attached hereto collectively as **Exhibit J** and incorporated herein by reference..

29. Unfortunately, Wachovia feels it has no choice but to ask that a receiver be appointed for the management of the Office Condominiums.

## COUNT I

### (BREACH OF CONTRACT AGAINST THE ESTATE FOR THE MCNEIL NOTE)

30. Wachovia incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

31. The McNeil Note is a valid and binding contract.

32. Wachovia has fulfilled its obligations to the Estate under the McNeil Note.

33. The Estate is in breach of the McNeil Note for, among other things, failure to make payments as and when due under the terms of the McNeil Note.

34. As a consequence of the Estate's breach and failure to pay its obligations on the McNeil Note as and when due under the terms of the McNeil Note, Wachovia has suffered damages as set out further herein.

35. The McNeil Note has matured and Wachovia has made demand for payment of all amounts owing on the McNeil Note from the Estate.

1/2006970.4

36. All obligations and amounts due and owing on the McNeil Loan are immediately payable.

37. The Estate has failed to make payment of all of the obligations and amounts under the McNeil Loan.

**WHEREFORE**, Wachovia demands judgment against the Estate for the principal indebtedness outstanding under the McNeil Note, plus accrued and accruing interest, late charges, costs, other fees, and expenses of collection, including without limitation attorneys' fees.

## COUNT II

### (BREACH OF CONTRACT AGAINST MRLP FOR THE MRLP NOTE)

38. Wachovia incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

39. The MRLP Note is a valid and binding contract.

40. Wachovia has fulfilled its obligations to the Estate under the MRLP Note.

41. MRLP is in breach of the MRLP Note for, among other things, failure to make payments as and when due under the terms of the MRLP Note.

42. As a consequence of MRLP's breach and failure to pay its obligations on the MRLP Note as and when due under the terms of the MRLP Note, Wachovia has suffered damages as set out further herein.

43. Wachovia has accelerated the maturity of the MRLP Note and made demand for payment of all amounts owing on the MRLP Note from MRLP.

44. All obligations and amounts due and owing on the MRLP Loan are immediately payable.

I/2006970.4

45.     MRLP has failed to make payment of all of the obligations and amounts under the MRLP Loan.

**WHEREFORE**, Wachovia demands judgment against the Estate for the principal indebtedness outstanding under the MRLP Note, plus accrued and accruing interest, late charges, costs, other fees, and expenses of collection, including without limitation attorneys' fees.

## COUNT III

### (BREACH OF CONTRACT AGAINST THE ESTATE FOR THE MCNEIL GUARANTY)

46.     Wachovia incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

47.     The McNeil Guaranty is a valid and binding contract.

48.     Wachovia has fulfilled its obligations under the McNeil Guaranty.

49.     The Estate is in breach of the McNeil Guaranty for, among other things, failure to make payments under the terms of the McNeil Guaranty.

50.     As a consequence of the Estate's breach and failure to pay its obligations on the McNeil Guaranty, Wachovia has suffered damages as set out further herein.

51.     All obligations and amounts due and owing on the McNeil Guaranty are immediately payable.

52.     The Estate has failed to make payment of all of the obligations and amounts under the MRLP Loan.

**WHEREFORE**, Wachovia demands judgment against the Estate for the principal indebtedness outstanding under the McNeil Guaranty, plus accrued and accruing interest, late charges, costs, other fees, and expenses of collection, including without limitation attorneys' fees.

1/2006970.4

## COUNT IV

### (APPOINTMENT OF RECEIVER)

53. Wachovia incorporates and re-allege all preceding paragraphs as if fully set forth herein.

54. Wachovia seeks appointment of a receiver to take control of the Office Condominiums and to protect the interests of Wachovia in and to the Office Condominiums.

55. A receiver is a "neutral court officer appointed by the court to take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of undertaking any . . . appropriate action." *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure, § 2981, at 5 (1973)).

56. The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. *National Partnership Inv. Corp. v. National Hous. Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998).

57. "Under federal law, the appointment of a receiver is not a drastic remedy." *U.S. v. Berk & Berk*, 767 F. Supp. 593, 598 (D. N.J. 1991).

58. Wachovia is entitled to a receiver on three separate and independent grounds.

59. First, Wachovia has a contractual right under the McNeil 1st Lien Mortgage to the appointment of a receiver for the Office Condominiums.

60. Second, Wachovia has a legal and equitable right to the appointment of a receiver for the Office Condominiums.

61. Contemporaneously with this Complaint, Wachovia is filing a separate motion (the "Motion") requesting the appointment of a receiver. Wachovia's contractual, legal, and

1/2006970.4

equitable arguments are set out more fully in that motion, in addition to the receiver's identity, experience, and qualifications.

62.   Accordingly, Wachovia requests that the Court appoint a receiver for the Office Condominiums.

**WHEREFORE**, Wachovia prays that judgment be entered in its favor and against the Defendants as requested in the Motion, and granting Wachovia such other relief as the Court deems proper.

/s/ Glenn E. Glover
Glenn E. Glover
James L. Webb
Parker Griffin
Attorneys for Wachovia Bank, National Association

**OF COUNSEL:**

**Bradley Arant Boult Cummings LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile:  (205) 521-8800
gglover@babc.com
jwebb@babc.com
pgriffin@babc.com

## SERVE DEFENDANTS AT:

Defendants' Addresses:

The Estate of Charles E. McNeil
c/o Mildred C. McNeil, Personal Representative
709 Azalea Rd.
Mobile, AL  36609

McNeil and Rast, Ltd.
c/o Estate of Chalres E. McNeil
c/o Mildred C. McNeil, Personal Representative
205 North Conception Street
Mobile, Alabama  36602

## VERIFICATION

Lewis Compton of Wachovia Bank, National Association, being of age and duly sworn, deposes and says: (1) that he is a Vice-President of Wachovia Bank, National Association, and is responsible for collection and management of the McNeil Loan and the MRLP Loan; (2) that he/she has read the foregoing Verified Complaint; and (3) that the contents thereof are true to the best of his knowledge, information and belief.

**WACHOVIA BANK, NATIONAL ASSOCIATION**

By _____

Its __VICE PRESIDENT_____

STATE OF ALABAMA       )

COUNTY OF JEFFERSON    )

Subscribed, sworn to, and acknowledged before me by _Lewis Compton Jr_ this _9th_ day of _March_, 20_10_.

Witness my hand and official seal.

My commission expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Apr 6, 2012
BONDED THRU NOTARY PUBLIC UNDERWRITERS

_____
Notary Public

21